IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **WNAC, LLC** <br> 470 Atlantic Avenue, Floor 4 <br> Boston, MA 02210, <br> Plaintiff, <br><br> v. <br><br> **VERIZON CORPORATE SERVICES GROUP INC.** <br> 1 Verizon Way <br> Basking Ridge, NJ 07920, <br><br><br> **NEXSTAR MEDIA GROUP, INC.** <br> 545 E. John Carpenter Freeway, Suite 700 <br> Irving, Texas 75062, <br><br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, WNAC, LLC ("WNAC"), alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1. Plaintiff WNAC seeks monetary relief from Defendants' willful violations of WNAC's retransmission consent rights for its licensed local television broadcast station WNAC-TV ("the Station").

2. Defendant Verizon Corporate Services Group Inc. ("Verizon") retransmitted the Station's signal in the Station's designated market area in 2017-2019 without the consent from

1

WNAC that is required by federal law, and without compensating WNAC. Verizon's actions constitute direct copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

3. Defendant Nexstar Media Group, Inc. ("Nexstar") knew of and materially contributed to Verizon's unlawful actions, and its actions thus constitute contributory copyright infringement.

4. Nexstar had the right and ability to control Verizon's unlawful actions and financially benefitted from Verizon's unlawful actions, and its actions thus constitute vicarious copyright infringement.

5. Verizon and Nexstar (together "Defendants"), separately and in concert with one another, engaged in unfair or deceptive representations and acts in colluding to retransmit the Station's signal in 2017-2019 without WNAC's required consent, with Nexstar secretly collecting payments for unlawful retransmissions from Verizon. Defendants' deceptive acts and practices harmed WNAC, including by denying WNAC fair value compensation for the retransmissions of its signal, in violation of M.G.L. ch. 93A, § 11.

6. Defendants' conduct constitutes unjust enrichment under Massachusetts law, based on the fair market value of retransmitting the Station's signal in the Station's designated market area from 2017-2019, which occurred without WNAC's consent and without compensating WNAC.

## PARTIES

7. Plaintiff WNAC is a Rhode Island limited liability company with an address at 470 Atlantic Avenue, Floor 4, Boston, MA 02210.

8. Defendant Verizon is a New York corporation with a principal place of business at 1 Verizon Way, Basking Ridge, NJ 07920.

9. Defendant Nexstar is a Delaware corporation with a principal place of business at 545 E. John Carpenter Freeway, Suite 700, Irving, Texas 75062.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action under 17 U.S.C. § 501(c) and 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over WNAC's state law claims under 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

11. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting business in Massachusetts. Nexstar owns and operates television broadcast station WPRI-TV and plays a substantial role in the operation of the Station. Both WPRI-TV and the Station transmit programming in Massachusetts. Verizon retransmits television programming in Massachusetts, including programming carried by the Station's signal.

12. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to WNAC's claims have occurred in this District and the rights at issue are located in this District.

## BACKGROUND ON RETRANSMISSION CONSENT RIGHTS

13. Most households in the United States get their television programming by subscribing to a multichannel video programming distributor ("MVPD")—typically a cable or satellite operator—which provides viewers with access to multiple video channels, often including the signals of television broadcast stations licensed by the Federal Communications Commission ("FCC") to serve a particular household's local market. More specifically, an MVPD typically receives, packages, and retransmits a broadcast station's signal within that

station's designated market area ("DMA") as defined by Nielsen Holdings ("Nielsen"). DMAs comprise 210 distinct geographic regions in the United States, with each county in the country assigned to one of the DMAs. Local television viewing in each DMA is measured by Nielsen.

14. The Communications Act of 1934, as amended ("Communications Act"), prohibits MVPDs from retransmitting a broadcast station's signal unless they first obtain that station's express consent, commonly known as "retransmission consent." In certain scenarios, an MVPD may be required to retransmit a broadcast station's signal, a requirement known as "must-carry."

15. Licensees of commercial broadcast television stations are required to elect between the two options of "must-carry" and "retransmission consent" every three years and must notify MVPDs of that election. Under Section 325(b)(l)(A) of the Communications Act, and Section 76.64(a) of the FCC Rules, if a television station exercises its retransmission consent rights, the MVPD cannot retransmit the station's signal without having first obtained the station's express consent. This consent must come from the FCC-approved licensee of the television broadcast station.

16. Retransmission consent may be granted through a retransmission consent agreement between a television station and an MVPD. These agreements typically have a three-year term, but the term need not align with the FCC's three-year cycle for retransmission consent/must-carry elections. For example, although the FCC may use 2015-2017 and 2018-2020 three-year cycles, the three-year cycle of a retransmission consent agreement may be 2017-2019. The retransmission consent agreement typically requires the MVPD to pay the broadcast station a monthly fee per subscriber for the right to retransmit the station's signal.

17. In some instances, a retransmission consent agreement may be negotiated by an MVPD and a third party acting on the television station licensee's behalf (with the station's explicit consent). Since April 2015, however, federal law has prohibited a certain type of joint or coordinated retransmission consent negotiation, namely a party's negotiation of retransmission consent on behalf of a television station where that party is itself the licensee of another commercial television station in the same DMA. *See* 47 U.S.C. §§ 325(b)(1)(A) and (b)(3)(C)(iv) and 47 C.F.R. § 76.65(b)(1)(viii).

## WNAC AND ITS RETRANSMISSION CONSENT RIGHTS

18. WNAC, LLC owns WNAC-TV ("the Station"), a local broadcast station that transmits television programming in the Nielsen-defined Providence, RI-New Bedford, MA Designated Market Area ("the Station's DMA"). The Station broadcasts programming provided by, at least, Fox Broadcasting Company, LLC and affiliated companies, the CW Network, LLC, and Nexstar under the applicable FCC framework and the authority of a 1996 Joint Marketing and Programming Agreement, as amended, between WNAC and Nexstar as a successor in interest (the "local marketing agreement" or "LMA"). For all periods of time relevant to this Complaint, WNAC timely notified Verizon of WNAC's election exercising its retransmission consent rights.

19. Before January 17, 2017, LIN Television Corporation ("LIN") and then Media General, Inc ("Media General") played a substantial role in Station programming, advertising, sales, and other operations under the LMA. LIN merged with Media General in December 2014. Under the terms of the LMA, LIN and Media General lawfully negotiated retransmission consent rights on behalf of WNAC with WNAC's express consent. This practice included negotiating one or more retransmission consent agreements with Verizon.

20. In 2015, WNAC (working through LIN/Media General) entered into an agreement with Verizon to retransmit the Station's signal in the Station's DMA ("the 2015 Agreement"). The term of the 2015 Agreement was February 6, 2015, through August 5, 2017.

21. Media General merged with Nexstar on January 17, 2017.

22. Nexstar owns, operates, programs, or provides services to hundreds of television stations in the United States.

23. Since January 17, 2017, Nexstar has played a substantial role in Station operations called for by the LMA.

24. Concurrently with fulfilling its LMA role at the Station, Nexstar owns and operates another local broadcast station, WPRI-TV. WPRI-TV and the Station are located in and transmit their signals to the Station's DMA.

25. Because Nexstar merged with Media General, under federal law, Nexstar is not and has never been legally permitted to negotiate or grant retransmission consent on behalf of WNAC. Because Nexstar fills concurrent roles under the Station's LMA and as a WPRI-TV licensee, MVPDs may not lawfully negotiate with Nexstar for consent to retransmit the Station's signal.

26. On December 31, 2016, Nexstar, as an entity that owns and/or operates numerous local broadcast television stations, executed a retransmission consent agreement with Verizon effective January 1, 2017 ("the 2016 Agreement"). The term of the 2016 Agreement was January 1, 2017, through December 31, 2019.

27. At the time of the negotiation and execution of the 2016 Agreement (and at all times thereafter), Nexstar had no right either to negotiate or grant retransmission rights for the Station's signal, including to Verizon.

28. WNAC was not party to the negotiation or execution of the 2016 Agreement and did not consent to Verizon's retransmission of the Station's signal for the 2017-2019 period.

29. After the change in the law that prohibited a party like Nexstar from negotiating retransmission consent rights on WNAC's behalf, WNAC began to negotiate agreements with various MVPDs directly once the prior retransmission consent agreements expired. From 2016 to the present, WNAC has executed retransmission consent agreements with several MVPDs, providing WNAC's required consent to retransmit the Station's signal. WNAC did not execute a retransmission consent agreement with Verizon for the 2017-2019 cycle and never consented to Verizon's retransmission of the Station's signal for the 2017-2019 cycle.

30. In 2020, WNAC executed a retransmission consent agreement with Verizon that provided WNAC's required consent to retransmit the Station's signal for the 2020-2022 cycle.

## DEFENDANTS AND THEIR WRONGFUL ACTS

31. Verizon is an MVPD and retransmits television programming throughout the United States. Upon information and belief, Verizon retransmits programming through at least the fiber optic cable system Verizon Fios.

32. Upon information and belief, Verizon attracts and earns advertising revenue based, at least in part, on the number of subscribers for its Verizon Fios cable system.

33. Upon information and belief, Nexstar's role at the Station under the LMA includes controlling MVPDs' access to a conduit (e.g., a fiber optic cable) carrying the Station's signal. Upon information and belief, MVPDs rely on this access to retransmit the Station's signal.

34. The Communications Act precludes any party other than WNAC, including Nexstar, from negotiating or granting retransmission consent for the Station's signal to any

7

MVPD. Because Nexstar owns and operates WPRI-TV in the same DMA as the Station, Nexstar is prohibited by federal law from negotiating retransmission consent for the Station's signal on WNAC's behalf.

35. Nexstar did not have the authority to grant Verizon consent to retransmit the Station's signal in 2017-2019 (whether under the 2016 Agreement or otherwise).

36. WNAC did not grant Verizon consent to retransmit the Station's signal in 2017-2019.

37. Verizon willfully, knowingly, and without WNAC's authorization retransmitted the Station's signal in the Station's DMA in 2017-2019.

38. Upon information and belief, Verizon paid Nexstar for retransmission of the Station's signal during the 2017-2019 cycle (although Nexstar could neither lawfully grant retransmission consent nor negotiate a per subscriber rate for Station retransmission fees and Nexstar knew that Verizon lacked consent to retransmit the Station's signal).

39. During the 2017-2019 cycle, neither Verizon nor Nexstar compensated WNAC for retransmitting the Station's signal.

40. Upon information and belief, Nexstar provided Verizon access to a conduit (e.g., a fiber optic cable) carrying the Station's signal in 2017-2019.

41. Upon information and belief, Nexstar willfully, knowingly, and without WNAC's consent facilitated the unauthorized retransmission of the Station's signal in the Station's DMA.

42. Upon information and belief, Nexstar had the right and ability to control Verizon's access to the Station's signal and allowed, enabled, or otherwise facilitated such access despite lacking WNAC's consent.

43. Upon information and belief, Nexstar had a direct financial interest in Verizon's unauthorized retransmissions.

44. Upon information and belief, Nexstar accepted payments from Verizon for the 2017-2019 cycle in connection with Verizon's unauthorized retransmissions of the Station's signal in the Station's DMA. Nexstar did not inform WNAC of these unauthorized retransmissions or payments and did not turn over to WNAC any payments related to these unauthorized retransmissions.

45. In around November 2019, Verizon and Nexstar approached WNAC to negotiate an agreement for WNAC's required retransmission consent for 2020-2022. This request suggested to WNAC that Verizon had retransmitted the Station's signal without WNAC's consent in 2017-2019.

46. Upon confirming Verizon had retransmitted the Station's signal since 2017, WNAC requested from Defendants a copy of any relevant agreements.

47. On December 18, 2019, Nexstar shared with WNAC a heavily redacted version of the 2016 Agreement. This is the first time WNAC had seen any part of the 2016 Agreement.

48. In December 2019, Nexstar represented to WNAC that the 2016 Agreement permitted retransmission of the Station's signal from 2017-2019 by Verizon (although it was impossible to confirm from the heavily redacted agreement provided by Nexstar to WNAC). Nexstar later recanted this admission and argued (notwithstanding Verizon's and its own prior claims to the contrary) that WNAC was not part of the 2016 Agreement with Verizon.

49. Verizon has not identified to WNAC any valid authority under which it retransmitted the Station's signal in 2017-2019.

50. Nexstar has not identified to WNAC any authority under which Verizon retransmitted the Station's signal in 2017-2019, nor has Nexstar identified any authority under which it allowed, enabled, or otherwise facilitated Verizon's retransmission of the Station's signal in 2017-2019.

51. Defendants knew or should have known that Nexstar did not have the authority in 2016 or thereafter to negotiate or grant retransmission consent on WNAC's behalf.

52. Defendants knew or should have known that WNAC did not consent to Verizon's retransmissions of the Station's signal in 2017-2019.

53. Defendants knew or should have known that WNAC did not consent to Nexstar allowing, enabling, or otherwise facilitating Verizon's retransmissions of the Station's signal in 2017-2019.

54. Defendants knew or should have known that, absent WNAC's express consent, Verizon could not lawfully retransmit the Station's signal in the Station's DMA in 2017-2019.

55. Verizon willfully and knowingly retransmitted the Station's signal despite lacking authority to do so.

56. Nexstar willfully and knowingly allowed, enabled, or otherwise facilitated Verizon's retransmission of the Station's signal despite lacking authority to do so.

57. Fully aware of WNAC's rights in its signal and of the federal laws controlling secondary retransmissions in a local broadcast station's DMA, Defendants acted knowingly, willfully, with reckless disregard of those rights and laws, and in bad faith.

**INJURY TO WNAC**

58. The unauthorized retransmissions violated WNAC's unilateral right to consent to retransmissions of the Station's signal.

59. Defendants' actions denied WNAC compensation for retransmissions of the Station's signal in 2017-2019.

60. Defendants profited from retransmitting the Station's signal without WNAC's consent. Verizon benefitted from its unlawful retransmissions of the Station's signal in 2017-2019 (without WNAC's required consent and compensation). Specifically, through its unlawful retransmissions, Verizon was able to provide its subscribers with access to the Station's highly desirable content, maintain and/or grow its subscriber base, and attract and receive substantial advertising revenue, which, upon information and belief, is based on and/or tied to the number of subscribers.

61. Upon information and belief, Nexstar and Verizon colluded to retransmit WNAC's signal in 2017-2019, without WNAC's required consent, with Nexstar pocketing the payments it had received from Verizon for the unauthorized retransmissions.

62. Consequently, Defendants have benefitted unfairly from the retransmissions of the Station's signal.

**FIRST CLAIM FOR RELIEF**
**Against Defendant Verizon**
**Direct Willful Copyright Infringement of Retransmission Consent Rights**

63. WNAC repeats and realleges each and every allegation set forth in this Complaint.

64. WNAC is licensed under appropriate federal laws to transmit all programming carried by the Station's signal.

65. WNAC did not consent to Verizon's retransmission of the Station's signal in the Station's DMA in 2017-2019.

66. This lack of WNAC's legally required consent notwithstanding, Verizon retransmitted the Station's signal in the Station's DMA in 2017-2019.

67. Verizon did not compensate WNAC for the unauthorized retransmissions in 2017-2019.

68. Verizon violated WNAC's retransmission consent rights under the Copyright Act in violation of 17 U.S.C. § 111(c)(2)(A).

69. Verizon's conduct constitutes willful direct copyright infringement in violation of 17 U.S.C. § 111(c)(2)(A).

## SECOND CLAIM FOR RELIEF
### Against Defendant Nexstar
### Contributory Copyright Infringement of Retransmission Consent Rights

70. WNAC repeats and realleges each and every allegation set forth in this Complaint.

71. Verizon violated WNAC's retransmission consent rights under the Copyright Act in violation of 17 U.S.C. § 111(c)(2)(A).

72. Nexstar unlawfully allowed, enabled, or otherwise facilitated Verizon's access to the Station's signal for Verizon's unauthorized retransmissions in 2017-2019.

73. Nexstar knowingly induced, caused, and/or materially contributed to Verizon's direct infringement.

74. Upon information and belief, Verizon paid Nexstar for retransmitting the Station's signal in 2017-2019. Thus, Nexstar knew or had reason to know of and directly and materially benefitted from Verizon's infringement.

**THIRD CLAIM FOR RELIEF**
**Against Defendant Nexstar**
**Vicarious Copyright Infringement of Retransmission Consent Rights**

75. WNAC repeats and realleges each and every allegation set forth in this Complaint.

76. Defendant Verizon violated WNAC's retransmission consent rights under the Copyright Act in violation of 17 U.S.C. § 111(c)(2)(A).

77. Defendant Nexstar unlawfully allowed, enabled, or otherwise facilitated Verizon's access to the Station's signal for Verizon's unauthorized retransmission and did not revoke that access in 2017-2019.

78. Nexstar had the right and ability to control Verizon's direct infringement.

79. Upon information and belief, Verizon paid Nexstar for retransmitting the Station's signal in 2017-2019.  Nexstar thus had a direct financial interest in Verizon's infringement.

**FOURTH CLAIM FOR RELIEF**
**Against All Defendants**
**Breach of Massachusetts Unfair Trade Practices Statute**
**M.G.L. ch. 93A, § 11**

80. WNAC repeats and realleges each and every allegation set forth in this Complaint.

81. Defendants and WNAC were engaged in trade or commerce.

82. Upon information and belief, Verizon and Nexstar colluded to retransmit WNAC's signal in 2017-2019 without WNAC's required consent, with Nexstar pocketing the payments from Verizon in connection with the unlawful retransmissions.

83. At various times, Defendants have represented that the 2016 Agreement between Nexstar and Verizon authorized Verizon's retransmission of the Station's signal in 2017-2019.

84. Defendants knew or should have known that the 2016 Agreement could not have provided such authorization and that only WNAC (and not Nexstar) could have granted retransmission consent to Verizon. Defendants thus engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

85. Upon information and belief, Verizon paid Nexstar a monthly fee, based on subscriber counts, for unlawful retransmissions of the programming carried by the Station's signal in 2017-2019.

86. Defendants failed to disclose to WNAC (a) Verizon's unlawful retransmissions of the Station's signal, (b) Nexstar's facilitation of Verizon's unlawful retransmissions, and (c) Verizon's payments to Nexstar in connection with the unlawful retransmissions, including after the November 2019 discussions among Verizon, Nexstar, and WNAC.

87. WNAC has requested from Defendants an accounting of payments made from Verizon to Nexstar for Verizon's unauthorized retransmissions of the Station's signal in 2017-2019. WNAC has also requested from Defendants subscriber counts in the Station's DMA for each month of 2017-2019. Defendants have refused to comply.

88. Defendants' unfair or deceptive acts or practices occurred primarily and substantially in Massachusetts where WNAC maintains a place of business and where the Station's signal was unlawfully retransmitted.

89. Defendants' unfair or deceptive acts or practices were willful or knowing.

90. WNAC suffered a loss of money as a result of Defendants' unfair or deceptive acts or practices. As result of Defendants' unfair or deceptive acts or practices, WNAC was denied at least the fair market value of the retransmissions of the Station's signal in 2017-2019.

**FIFTH CLAIM FOR RELIEF**
**Against All Defendants**
<u>**Unjust Enrichment**</u>

91. WNAC repeats and realleges each and every allegation set forth in this Complaint.

92. Verizon engaged in retransmissions of the Station's signal in 2017-2019 without WNAC's consent, conferring a benefit to Verizon, including its ability to offer the Station's highly desirable programming to its subscriber base during that period.

93. Moreover, upon information and belief, offering the Station's programming (through its unlawful retransmissions) has resulted in Verizon maintaining and/or growing its subscriber base and receiving substantial advertising revenue, which, upon information and belief, is based on and/or tied to the number of subscribers. Upon information and belief, but for its unlawful retransmissions of the Station's signal in 2017-2019, Verizon would have lost subscribers (and/or would not have been able to grow its subscriber base).

94. Upon information and belief, but for its unlawful retransmissions of the Station's signal in 2017-2019, Verizon would not have gained substantial advertising revenue, which, upon information and belief, was calculated based on and/or otherwise tied to the number of subscribers.

95. Upon information and belief, Verizon paid Nexstar for the unauthorized retransmissions for the 2017-2019 cycle.

96. Nexstar allowed, enabled, or otherwise facilitated Verizon's retransmissions of the Station's signal in 2017-2019 without WNAC's consent, conferring a benefit to Nexstar, who collected, retained, and profited from Verizon's payments.

97. Defendants appreciated and understood the benefits conferred upon them.

98. Defendants did not compensate WNAC for the retransmission of the Station's signal in 2017-2019.

99. Defendants were conferred these benefits despite lacking retransmission consent from WNAC. It would be inequitable for Defendants to retain their respective benefits.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, WNAC respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, WNAC respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A. With respect to the First Claim for Relief, an Order declaring that Verizon's unauthorized retransmissions of the Station's signal in the Station's DMA in 2017-2019 constitute copyright infringement, as detailed above.

B. With respect to the Second Claim for Relief, an Order declaring that Verizon's unauthorized retransmissions of the Station's signal in the Station's DMA in 2017-2019 constitute copyright infringement and declaring that Nexstar is secondarily liable for contributory copyright infringement.

C. With respect to the Third Claim for Relief, an Order declaring that Verizon's unauthorized retransmissions of the Station's signal in the Station's DMA in 2017-2019 constitute copyright infringement and declaring that Nexstar is secondarily liable for vicarious copyright infringement.

D. On the First, Second, and Third Claims for Relief, an award of statutory damages to WNAC under 17 U.S.C. § 504(c) for willful copyright infringement or, at WNAC's election,

under 17 U.S.C. § 504(b), an award of actual damages to WNAC, Defendants' profits from infringement, and prejudgment and post-judgment interest, in an amount to be determined at trial, and trebling such damages.

  E. On the Fourth Claim for Relief, an award to WNAC of the fair market value of the retransmission fees for Verizon's unauthorized retransmissions in 2017-2019 (including but not limited to disgorgement of money paid to Nexstar for said retransmissions) and prejudgment and post-judgment interest, in an amount to be determined at trial, and trebling such damages and/or awarding punitive damages for Defendants' willful and knowing conduct.

  F. Regarding the Fifth Claim for Relief, an award to WNAC of the fair market value of the retransmission fees for Verizon's unauthorized retransmissions in 2017-2019 (including but not limited to disgorgement of money paid to Nexstar for the unauthorized retransmissions) and prejudgment and post-judgment interest, in an amount to be determined at trial, and trebling such damages and/or awarding punitive damages for Defendants' willful and knowing conduct.

  G. An award to WNAC of attorneys' fees and costs under 17 U.S.C. § 505, M.G.L. ch. 93A, § 11, and other applicable laws.

  H. Other relief as the Court may deem appropriate.

Dated: May 6, 2021

Respectfully submitted,

*/s/* Alissa K. Lipton
Alissa K. Lipton (BBO # 678314)
Sara Leiman (BBO # 703618)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
Two Seaport Lane
Boston, MA  02210-2001
(617) 646-1600 (phone)
(617) 646-1666 (fax)
alissa.lipton@finnegan.com
sara.leiman@finnegan.com

Anna Naydonov (*pro hac vice* pending)
Margaret Esquenet (*pro hac vice* pending)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
margaret.esquenet@finnegan.com
anna.naydonov@finnegan.com

Counsel for Plaintiff,
WNAC, LLC